### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MICHAEL A. BEVIS,**

                    **Plaintiff,**

**v.**                                                    **Case No: 6:20-cv-579-LRH**

**COMMISSIONER OF SOCIAL
SECURITY,**

                    **Defendant.**
_____

### MEMORANDUM OF DECISION[1]

Michael A. Bevis ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits and supplemental security income.   Claimant raises one argument challenging the Commissioner's final decision, and, based on that argument, requests that the matter be remanded to the Commissioner for further administrative proceedings.   (Doc. 24, at 26).   The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and should be affirmed.   (*Id.*).   For the reasons stated herein, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

### I.      PROCEDURAL HISTORY.

On December 6, 2018, Claimant filed applications for disability insurance benefits and

_____

[1]  The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.   *See* Docs. 18, 22-23.

supplemental security income, alleging that he became disabled on November 25, 2018.[2]   (R. 90-91, 243-44, 245-51).   His claims were denied initially and on reconsideration, and he requested a hearing before an ALJ.   (R. 130-37, 143-49, 150-59).   A hearing was held before the ALJ on November 7, 2019, at which Claimant was represented by an attorney.   (R. 38-67).   Claimant and a vocational expert ("VE") testified at the hearing.   (*Id.*).

The ALJ subsequently issued an unfavorable decision finding that Claimant was not disabled.   (R. 15-32).   Claimant sought review of the ALJ's decision by the Appeals Council.   (R. 7-8).   On February 28, 2020, the Appeals Council denied the request for review.   (R. 1-6).   Claimant now seeks review of the final decision of the Commissioner by this Court.   (Doc. 1).

## II.     THE ALJ'S DECISION.[3]

After considering the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. §§ 404.1520(a), 416.920(a).   (R. 15-32).[4]   The ALJ first found that Claimant met the insured status requirements of the Social Security Act through December 31, 2023.   (R. 17).   The ALJ concluded that Claimant had not engaged in substantial gainful activity since the alleged disability onset date of November 25, 2018.   (*Id.*).   The ALJ then found that Claimant

---

[2] Claimant filed a prior application under Title II of the Social Security Act, which was denied initially on December 7, 2017.   (R. 15).   Claimant did not appeal the prior denial.   (*Id.*).

[3] Upon a review of the record, the Court finds that counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum.   (Doc. 24).   Accordingly, the Court adopts those facts included in the body of the Joint Memorandum by reference and only restates them herein as relevant to considering the issues raised by Claimant.

[4] An individual claiming Social Security disability benefits must prove that he or she is disabled.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy.   *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

suffered from the following severe combination of impairments:   irritable bowel syndrome (IBS),

obesity, depression, a bipolar disorder, an anxiety disorder, and an attention-deficit/hyperactivity

disorder (ADHD).   (R. 18).   The ALJ concluded that Claimant did not have an impairment or

combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart

P, Appendix 1.   (R. 20-22).

After careful consideration of the entire record, the ALJ found that Claimant had the residual

functional capacity ("RFC") to perform medium work as defined in the Social Security regulations,[5]

with the following limitations:

> The claimant can lift, carry, push, or pull 50 pounds occasionally (up to one-third of
> the workday) and 25 pounds frequently (up to two-thirds of the workday), stand or
> walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday.
> The claimant can never climb ladders, ropes, or scaffolds, and should avoid exposure
> to hazards, such as heights or machinery with moving parts.   Additionally, the
> claimant can perform work which is simple and routine, a meaning specific
> vocational preparation (SVP) level of 1 or 2 (on a scale of 1 to 9 (with 9 being the
> highest skill level)); can have no production rate pace work; can have only occasional
> changes in a routine workplace setting; can have occasional contact with co-workers,
> supervisors, and the general public; would likely be off task 10% of the work period;
> and, would likely be absent from work on an unscheduled basis (including the
> probationary period) 1 day per month.

(R. 22-23).

Based on this assessment, the ALJ concluded that Claimant was not capable of performing

any past relevant work, which included work as a stocker and a route delivery driver.   (R. 29-30).

However, the ALJ found that, considering Claimant's age, education, work experience, and RFC,

as well as the testimony of the VE, Claimant is capable of making a successful adjustment to other

---

[5] The social security regulations define medium work to include:

lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25
pounds.   If someone can do medium work, we determine that he or she can also do sedentary and
light work.

20 C.F.R. §§ 404.1567(c), 416.967(c).

work that exists in significant numbers in the national economy.  (R. 30).  Specifically, the ALJ found that Claimant would be able to perform the requirements of representative unskilled medium occupations, with an SVP level of 2, such as: groundskeeper, salvage laborer, and automobile detailer.  (R. 31).  Accordingly, the ALJ concluded that Claimant was not under a disability, as defined by the Social Security Act, from November 25, 2018 through the date of the decision.  (R. 31).

## III.   STANDARD OF REVIEW.

Because Claimant has exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).  The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  However, even "within this narrowly circumscribed role, [reviewing courts] do not act

as automatons.   We must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (internal citations omitted).

## IV.   ANALYSIS.

In the Joint Memorandum, which the Court has reviewed, Claimant raises only one issue: whether the ALJ applied the correct legal standards in his consideration of the opinion of Ali El-Menshawi, M.D., Claimant's treating psychiatrist.   (Doc. 24, at 13).   Accordingly, this is the only issue the Court will address.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).   The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440.   In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the opinions of medical and non-medical sources.   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

Claimant filed his applications for disability insurance benefits and supplemental security income on December 6, 2018.   (R. 90-91, 243-44, 245-51).   Effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.   When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.   The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).   We will articulate how we considered the medical opinions and prior

administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. §§ 404.1520c(a), 416.920c(a).    Subparagraph (c) provides that the factors to be considered include: (1) supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of the length of treatment relationship; frequency of examination; purpose of treatment relationship; extent of treatment relationship; and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding.  *Id.* §§ 404.1520c(c), 416.920c(c).

Because Claimant filed his application after March 27, 2017, the new regulations apply to his claim.  Pursuant to the new regulations, the Commissioner is not required to articulate how he "considered each medical opinion or prior administrative medical finding from one medical source individually."  *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1).  However, pursuant to the regulations, the most important factors the Commissioner will consider when determining the persuasiveness of medical opinions are supportability and consistency.  *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).  The regulations state that the Commissioner will explain how he considered the supportability and consistency factors in the determination or decision.  *Id.*  Thus, Courts have found that "[o]ther than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness."  *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (quoting *Mudge v. Saul*, No. 4:18-cv-693-CDP, 2019 WL 3412616, at *4 (E.D. Mo. July 29, 2019)).  *See also Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-

- 6 -

1662-Orl-PDB, 2020 WL 5810273, at *5 (M.D. Fla. Sept. 30, 2020) (finding no error where ALJ did not specifically address in the decision any factors other than supportability and consistency).[6]

Despite the substantive changes in the regulations, the current versions "still instruct[] an ALJ to weigh all medical opinions in light of the length, purpose and extent of the treatment relationship and frequency of examinations which continues to 'indicate the importance of treating physicians' opinions – especially where the physician has maintained a longstanding and consistent relationship with the claimant.'" *Brown v. Comm'r of Soc. Sec*, No. 6:20-cv-840-GJK, 2021 WL 2917562, at *3 (M.D. Fla. July 12, 2021) (quoting *Simon v. Comm'r of Soc. Sec.*, 1 F.4th 908, 912 n.4 (11th Cir. 2021)).

### A.    *Dr. El-Menshawi's March 18, 2019 Opinion*

Here, Claimant's argument rests solely on the ALJ's consideration of the opinion of Dr. El-Menshawi, Claimant's treating psychiatrist.   (Doc. 24, 13-20).   On March 18, 2019, Dr. El-Menshawi completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) form for Claimant.   (R. 490-92).   In completing the form, Dr. El-Menshawi opined, in "check-the-box" format, that Claimant had a "poor/none" ability to relate to coworkers, deal with the public, deal with work stresses, and maintain attention/concentration; understand, remember, and carry out detailed, but not complex, job instructions; behave in an emotionally stable manner; and relate predictably in social situations.   (*Id.*, at 490-91).   Dr. El-Menshawi did not provide any description of limitations or provide any clinical/medical findings to support these assessments.   (R. 491-92). He further opined that Claimant had a "fair" ability to follow work rules, use judgment with the

---

[6] "Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, No. 6:20-CV-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

public, interact with supervisors, function independently; understand, remember, and carry out simple and complex job instructions; maintain personal appearance; and demonstrate reliability. (R. 490-91).   Again, Dr. El-Menshawi did not provide any description of limitations or provide any clinical/medical findings to support these assessments.   (R. 491-92).   As far as "any other work-related activities which are affected" by Claimant's impairments, and how such activities are affected, Dr. El-Menshawi noted that Claimant was "having severe generalized anxiety and severe social anxiety [and] psychosis hardly [sic] to treat [and] unable to deal with public as well as coworker[s]."   (*Id.*, at 492).   He stated that he first saw Claimant on October 4, 2006, and his last appointment with Claimant was on March 7, 2019.   (*Id.*).   In response to the question: "In your expert opinion, how long has claimant's psychiatric impairment existed at the functional severity described by you in this form?," Dr. El-Menshawi responded: "All the time since I started seeing him [,] with multiple changes of meds."   (*Id.*).

> In evaluating Dr. El-Menshawi's opinion, the ALJ stated:
>
> I find that this medical source's opinion is unpersuasive as it is too restrictive, because it is not supported by objective medical evidence noted in the opinion, the opinion is not explained in detail, and it is not consistent with all of the other evidence throughout the record from all other sources, through the hearing level, (as set forth in detail in the following paragraphs immediately below) which has convinced me that the claimant can perform work which is simple and routine, meaning SVP level of 1 or 2, although with no production rate pace work; can have occasional changes in a routine workplace setting; can have occasional contact with co-workers, supervisors, and the general public; would likely be off task only 10% of the work period; and, would likely be absent from work on an unscheduled basis (including the probationary period) only 1 day per month.

(R. 25-26).[7]   The ALJ then went on to consider the following pieces of evidence in the record: a Supplemental Anxiety Questionnaire completed by Claimant on January 27, 2019, a "Function

---

[7] At a later stage in the decision, the ALJ further stated that he did not give Dr. El-Menshawi's opinion controlling weight "because opinions on the issues of whether the claimant is 'disabled' or 'unable to work' are reserved to the Commissioner because they are administrative findings that are dispositive of a case (20 CFR §§ 404.1527(d) and 416.927(d))."   (R. 28).   The ALJ then reiterated the same reasons previously identified for finding Dr. El-Menshawi's

Report- Adult- Third Party" form completed by Claimant's wife on March 21, 2019, Claimant's testimony at the hearing, ER records from Orlando Health dated May 27, 2019, records from Psychiatric Group of Orlando ("PGO") from March 21, 2019 and September 16, 2019, and a record from Physician Associates from April 9, 2019.   (R. 26-27).   In rejecting Dr. El-Menshawi's opinion, the ALJ specifically relied on portions of three of these records as follows:

> Nevertheless, on April 9, 2019, the record at Physician Associates noted that the claimant was alert and in no acute distress (Exhibit 5F/9).   On May 27, 2019, the ER record at Orlando Health also noted that the claimant was alert, oriented, calm, cooperative, verbally and physically non-threatening, able to follow commands, in no acute distress, and with an expressive affect, as well as clear, coherent, logical, well-paced, spontaneous speech (Exhibit 7F/3, 6-7).   In addition, on March 21, 2019 and September 16, 2019, the record at PGO noted that the claimant was alert, oriented, well groomed, and with normal eye contact, unimpaired intellectual functioning, fair insight and judgment, and no suicidal or homicidal ideation (Exhibit 8F/3, 30-31).

(R. 27).

Claimant argues that the ALJ's reasons for rejecting the opinion of Dr. El-Menshawi, Claimant's longtime treating physician, are not based on the correct legal standards or supported by substantial evidence.   (Doc. 24, at 14-16; *see* R. 25-27, 28).   Specifically, Claimant takes issue with the ALJ's analysis of the "consistency" factor – that other evidence in the record is inconsistent with Dr. El-Menshawi's opinion – and argues that the ALJ's reasons for rejecting this opinion do not constitute "good cause."   (Doc. 24, at 16-18; *see* R.25-27).[8]   Claimant attacks each of the records the ALJ relies upon, which the Court will address seriatim.

opinion unpersuasive.   (*Id.*).

[8]   Claimant later states, in a single conclusory sentence, that the ALJ "failed to evaluate or consider" any of the factors listed in 20 C.F.R. §§ 404.1520c(c)(1)-(4) and 416.920c(c)(1)-(4) when evaluating Dr. El-Menshawi's opinion. (Doc. 24, at 19).   However, the only factor Claimant provides any argument or analysis about is the consistency factor, and Claimant is notably silent as to the supportability factor.   (*Id.*, at 16-19).   Having not addressed any of these other factors beyond this lone sentence, the Court finds any argument as to these factors has been waived.   *See N.L.R.B. v. McClain of Georgia, Inc*., 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").   *See also Allen v. Comm'r of Soc. Sec.*, Case No. 6:18-cv-1806-Orl-DCI, 2020 WL 263665 (M.D. Fla. Jan. 17, 2020) (waiving perfunctory arguments

B.      *The Appropriate Legal Standard*

As an initial matter, the Commissioner argues that the new regulations do away with the requirement that the ALJ demonstrate "good cause" for rejecting the opinion of a treating physician, and that cases applying such a rule are "outdated."   (R. 24-25).   *Compare* 20 C.F.R §§ 404.1520c(a), 416.920c(a) (which do not expressly require a showing of "good cause" but no longer include the treating source rule), *with Winschel*, 631 F. 3d at 1179 (applying a "good cause" standard for evaluating treating physician opinions).   The Eleventh Circuit has not yet spoken on this issue, and district courts in this Circuit have diverged in their approaches.   *See Pierson v. Comm'r of Soc. Sec.*, No. 6:19-cv-01515-RBD-DCI, 2020 WL 1957597, at *3, n.4 (M.D. Fla. Apr. 8, 2020), *report and recommendation adopted*, No. 6:19-cv-1515-Orl-37-DCI, 2020 WL 1955341 (M.D. Fla. Apr. 23, 2020) (applying "good cause" standard articulated in *Winschel* to case decided under new regulations); *Martinez v. Comm'r of Soc. Sec.*, No. 6:19-cv-02379-ACC-DCI, 2020 WL 4820651, at *2, n.2 (M.D. Fla. Aug. 3, 2020), *report and recommendation adopted*, No. 6:19-cv-2379-Orl-22-DCI, 2020 WL 4816070 (M.D. Fla. Aug. 19, 2020) (noting that *Winschel* remains binding Eleventh Circuit precedent).   *But see Douglas v. Saul*, No. 4:20-cv-822-CLM, 2021 WL 2188198, at * 4 (N.D. Ala. May 28, 2021) (applying the 2017 regulations, not the treating physician rule from *Winschel*, to a claim filed after March 27, 2017).

Given the absence of any binding or persuasive guidance from the Court of Appeals, the Court is not willing to go as far as the Commissioner suggests and find that cases applying the "good cause" standard are no longer good law, particularly given that *Winschel* remains binding Eleventh Circuit precedent.   Further supporting this conclusion is the fact that the Eleventh Circuit recently recognized that the factors to be considered by the ALJ under the new regulations "continue to

---

as arguably abandoned).

indicate the importance of treating physicians' opinions—especially where the physician has maintained a longstanding and consistent relationship with the claimant." *Simon*, 1 F.4th, at 918, n.4.   Accordingly, the Court finds reliance on *Winschel* and its progeny appropriate, particularly in the absence of any binding or persuasive authority to the contrary.   It may be that this is a non-issue here, as the Court finds that the ALJ erred under the new regulations, even if the "good cause" standard no longer applies.

      C.     *The April 9, 2019 Treatment Notes*

The first record Claimant takes issue with consists of treatment notes from an examination at Physician Associates by Claimant's primary care physician, Todd Sontag, D.O., dated April 9, 2019, which states Claimant was "alert and in no acute distress."  (R. 475-76).   Claimant argues that reliance on this record "does not provide the requisite good cause to reject the opinion of his long-time treating psychiatrist, Dr. El-Menshawi."   (Doc. 24, at 16-17).

The record indicates that the April 9, 2019 treatment notes were written by Dr. Sontag during a physical examination of Claimant at an appointment concerning Claimant's obesity and non-alcoholic fatty liver disease.   *See* R. 475-76.   Dr. Sontag did not conduct a psychological examination of Claimant during the appointment.   *See id*.   The only arguable reference to Claimant's psychological state in Dr. Sontag's treatment notes is the notation that Claimant was "alert and in no acute distress" during the physical examination.   (R. 476).   The ALJ did not explain—nor is it ascertainable from the treatment notes—the meaning of "no acute distress" in this context.   However, courts have found that a physician's notation of "acute distress" refers to a patient who is in a state of emergency.   *See Wanserski v. Colvin*, No. 1:14-CV-1033-DKL-JMS, 2015 WL 5692521, at *7 (S.D. Ind. Sept. 28, 2015) (citations omitted) ("'Acute' refers to a disease, health effect, or symptom having a sudden, abrupt onset and a short, but severe, course, as opposed

to a chronic condition or symptom having a slow development and a protracted but mild course…'To physicians, 'No Acute Distress' means that your patient will probably not become unstable in the next 5 minutes.'").  Because the ALJ has not explained what "no acute distress" means in the context of Dr. Sontag's treatment notes, the Court cannot say that Dr. El-Menshawi's opinion was inconsistent with this evidence.  *Cf. Wanserksi*, 2015 WL 5692521, at *7 ("Without an explanation of what the recording medical professionals meant by 'no acute distress,' it cannot be simply assumed, as the ALJ did, that they meant that [Claimant] did not experience [symptoms] to the degree that she alleged.").[9]  And because the Court cannot ascertain whether these treatment notes are inconsistent with Dr. El-Menshawi's opinion, the Court also cannot state that the ALJ's reliance upon the treatment notes is supported by substantial evidence.

> D.    *The May 27, 2019 Emergency Room Records*

Next, Claimant argues that the ALJ erred by relying on the May 27, 2019 emergency room records from Orlando Health to discount Dr. El-Menshawi's opinion.  Claimant asserts that the record the ALJ considered, which states that Claimant "was alert, oriented, calm, cooperative, verbally and physically non-threatening, able to follow commands, in no acute distress, and with an expressive affect, as well as clear, coherent, logical, well-paced, spontaneous speech," were in reference to the ER doctor's Glasgow Coma Scale ("GCS") cognitive and neurological evaluation of Claimant.  (Doc. 24, at 17; *see* R. 27, 496-99).[10]  Claimant also points out that in the preceding paragraph of his decision, the ALJ cited to the same treatment note as follows:

---

[9]  The Court recognizes that this holding in *Wanserksi* concerned a credibility determination, not the evaluation of a medical opinion.   However, because the logic of the holding applies here, the Court finds the case persuasive.

[10]  "The Glasgow Coma Scale (GCS) is used to objectively describe the extent of impaired consciousness in all types of acute medical and trauma patients. The scale assesses patients according to three aspects of responsiveness: eye-opening, motor, and verbal responses." Shobhit Jain & Lindsay M. Iverson, Glasgow Coma Scale, NCBI (June 20, 2021), available at https://www.ncbi.nlm.nih.gov/books/NBK513298/.

> [O]n May 27, 2019, the ER record at Orlando Health noted that the claimant
> requested a psychiatric evaluation because he was hyperverbal, was very anxious,
> was having both auditory and visual hallucinations, and was thinking that [h]e might
> have confused his medications; and, upon examination, he was hearing voices, was
> unable to sleep, would avoid eye contact, and had an anxious, agitated affect, slurred
> speech, restless mentation, scattered thoughts, and loose, rambling, illogical
> thoughts, as well as difficulty focusing (Exhibit 7F/4, 6-7).

(R. 26) (citing R. 496-99).   Claimant therefore argues that the ALJ's reliance on these records is

"simply illogical," and that the ALJ "improperly cherry-picked" the GCS findings from the ER

record to reject Dr. El-Menshawi's opinion.   (Doc. 24, at 17-18).

Claimant nowhere articulates what aspect of the ALJ's finding with respect to these records

is "illogical," nor does he provide any legal authority for this argument.[11]   Moreover, Claimant's

recitation of the ER records is only partially correct.   Some of the notations, specifically that

Claimant was alert, oriented, able to follow commands and exhibited spontaneous, well-paced, and

logical speech, were in reference to the GCS assessment.   (R. 498).   On the other hand, the

notations that Claimant had an expressive affect, clear and coherent speech, calm and cooperative

demeanor, and was verbally and physically non-threatening, appear to refer to the ER's psychiatric

evaluation of Claimant.   (R. 499).   For these reasons, the Court does not find Claimant's argument

on this point to be persuasive.

Rather, the Court finds that the ALJ's reliance on the emergency room records is not

supported by substantial evidence, but for a different reason.   The Eleventh Circuit has recently

recognized in a published decision that "[m]any mental disorders—and bipolar disorder in

particular—are characterized by the unpredictable fluctuation of their symptoms, and thus it is not

surprising that even a highly unstable patient will have good days or possibly good months."

---

[11] Claimant also notes that the ER record "appears to be incomplete as there is no further information regarding [Claimant]'s treatment or discharge."   (R. 18).   However, Claimant does not cite any law on this point, nor does he articulate how the alleged incompleteness of the record bears on his assertion that the ALJ erred in relying on it.

*Simon*, 1 F.4th, at 920.[12]   Therefore, the ALJ's reliance on notations that Claimant was calm, cooperative, and non-threatening during one isolated trip to the ER—while also acknowledging that Claimant exhibited rambling and illogical thoughts and experienced hallucinations during this same ER visit—does not demonstrate an inconsistency between this record and Dr. El-Menshawi's opinion, which was formulated off of nearly 13 years of treatment.   *See id.* ("For those who suffer from [psychiatric] disorders, 'a snapshot of any single moment says little about [a person's] overall condition.") (quoting *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011)).   Accordingly, the ALJ's reliance on these records to discount Dr. El-Menshawi's opinion is not supported by substantial evidence.   *Simon*, 1 F. 4th at 920 (concluding that "isolated entries in . . . treatment notes indicating that [claimant] was at times stable on his meds, without more, cannot constitute or contribute to good cause to reject [the treating physician's] opinions.").

E.    *The March 21, 2019 and September 16, 2019 Medical Records*

Third, Claimant argues that the ALJ erred in rejecting Dr. El-Menshawi's opinion based on the March 21, 2019 and September 16, 2019 records from PGO, where Dr. El-Menshawi treated Claimant.   The ALJ stated that the records on these dates noted Claimant "was alert, oriented, well groomed, and with normal eye contact, unimpaired intellectual functioning, fair insight and judgment, and no suicidal or homicidal ideation."   (R. 27; 504-06, 531-33).   Claimant argues that the ALJ's reliance on these two treatment notes is again, "simply illogical," because they do not demonstrate an inconsistency in Dr. El-Menshawi's opinion.   (Doc. 24, at 18-19).   In so arguing, Claimant also points out that in the preceding paragraph of his decision, the ALJ noted that at these same two appointments, Claimant "was in an irritable, dysphoric, anxious mood, and with a flat

---

[12]  The Court recognizes that *Simon* involved a claim for benefits that was filed in March 2015, prior to the implementation of the new regulations.   However, as discussed above, the Court will continue to apply *Winschel*, and in turn the analysis from *Simon*, both of which are binding precedent on this Court.

affect, restless, agitated motor activity, pressured speech, auditory hallucinations (of self-harm commands), and paranoid ideations (of suspicious, obsessive, persecutory, irrational/excessive worry)."   (R. 26-27; 504-06, 531-33).   Claimant contends that the ALJ failed to identify a "genuine inconsistency" between these records and Dr. El-Menshawi's March 2019 opinion, and therefore the ALJ committed reversible error.   (Doc. 24, at 18-19 (citing *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019)).

*Simon* is again instructive on this issue. When evaluating a claimant's medical records, the *Simon* court held that "an ALJ must take into account the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace." *Simon*, 1 F.4th, at 921.   Thus, the Eleventh Circuit found that "it is not inconsistent—or even that unlikely—that a patient with a highly disruptive mood disorder, in a structured one-on-one conversation with a mental-health professional, might be capable of 'be[ing] redirected' from his 'tangential' thought processes so as to 'remain on topic.'"   *Id.* (alterations in original) (quoting *Schink*, 935 F.3d at 1263).   More troubling is the fact that these same records from these same dates also show that Claimant experienced symptoms consistent with mental illness, to include dysphoria, anxious mood, flat affect, auditory hallucinations, and paranoid ideations.   (R. 504-06, 531-33).

As was the case in *Simon*, the Court cannot discern, and the ALJ did not adequately explain, how Dr. El-Menshawi's treatment notes are inconsistent with his opinion.   The fact that Claimant was alert, oriented, well groomed, and able to maintain normal eye contact during these isolated points in time does not have any obvious bearing on his serious psychiatric symptoms—namely, his panic attacks, paranoid ideations, and hallucinations.   *See Simon*, 1 F.4th, at 921 ("[W]hen a claimant has been diagnosed with the types of mental and emotional disorders at issue here, highly generalized statements that the claimant was 'cooperative' during examination, that he exhibited

'organized speech' and 'relevant thought content,' or that he showed 'fair insight' and 'intact cognition' ordinarily will not be an adequate basis to reject a treating physician's opinions."). Moreover, even if those notations alone indicate that Claimant did not suffer from disabling psychiatric symptoms at that point in time, a person with psychiatric conditions experiencing an apparent fluctuation in symptoms is not "inconsistent with a finding of debilitating mental illness." *Id.*, at 920.   Accordingly, the ALJ's determination that Dr. El-Menshawi's opinion is inconsistent with his treatment notes on these two occasions is not supported by substantial evidence.   *Simon*, 1 F. 4th, at 920 (concluding that "isolated entries in . . . treatment notes indicating that [claimant] was at times stable on his meds, without more, cannot constitute or contribute to good cause to reject [the treating physician's] opinions.").[13]

> F.   *Other Issues Raised*

In his portion of the Joint Memorandum, the Commissioner argues that "the ALJ noted that Dr. El-Menshawi's opinion was not fully supported by the objective evidence, the opinion was not explained in detail, and was inconsistent with other evidence in the record."   (Doc. 24, at 25).   In support of his contention that the ALJ properly evaluated the supportability and consistency of Dr. El-Menshawi's opinion, the Commissioner states that the ALJ noted that Claimant was "generally treated conservatively with medications prescribed by Dr. El-Menshawi."   (Doc. 24, at 25) (citing R. 28-29).   However, the only discussion of Claimant's medications by the ALJ concerns whether Claimant suffered side effects.   (R. 28-29).   Thus, it appears that the Commissioner is making a

---

[13]   Because the Court finds that the ALJ's consideration of Dr. El-Menshawi's opinion was not supported by substantial evidence and warrants reversal of the Commissioner's final decision, the Court need not consider Claimant's final argument – that the ALJ erred in rejecting the opinion because the doctor made dispositive findings on Claimant's ability to work.   (Doc. 24, at 19).   However, the Court does note that the opinion went far beyond simply opining about Claimant's overall ability to work, and included numerous specific mental limitations.   Thus, it would appear that the ALJ also committed error in rejecting the opinion on this basis.   *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1267 (M.D. Fla. 2012) (finding that ALJ erred by rejecting opinion on the grounds that it made dispositive findings on claimant's ability to work where the opinion at issue included specific functional limitations).

post hoc argument, not addressed by the ALJ in his decision.   Therefore, the Court cannot address this point here.   *See Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (A court will not affirm based on a post hoc rationale that "might have supported the ALJ's conclusion.") (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

In sum, the ALJ relied upon portions of three medical records as the basis for finding that the opinion of Claimant's treating physician, Dr. El-Menshawi, was inconsistent with the other evidence in the record.   For the reasons discussed above, the ALJ's findings are not supported by substantial evidence.   Accordingly, the decision of the Commissioner is due to be reversed.   *See Sonya E. v. Saul*, 446 F. Supp. 3d 1287, 1301-02 (N.D. Ga. 2020) (reversing and remanding ALJ's decision because substantial evidence did not support ALJ's finding that treating physician's opinion was inconsistent with other record evidence, despite recognizing that physician's "failure to utilize the portions of the [check-the-box] form that provided a space for additional explanation or clinical findings" bore on the opinion's persuasive value).

## V.    CONCLUSION.

Based on the foregoing, it is **ORDERED** that:

1. The Commissioner's final decision is **REVERSED and REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Claimant and against the Commissioner, and thereafter, to **CLOSE** the case.

- 17 -

**DONE** and **ORDERED** in Orlando, Florida on August 5, 2021.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record